579 F.2d 526
 Ely HAIMOWITZ, Plaintiff-Appellant,
v.
The UNIVERSITY OF NEVADA, a subdivision of the State of
Nevada, the Board of Regents of the University of
Nevada and the Governing Board of the
University of Nevada, et al.,
Defendants-Appellees.
 No. 76-1181.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 1, 1978.
 
 Lew W. Carnahan (argued), Reno, Nev., for plaintiff-appellant.
 Edward G. Stevenson (argued), of Woodburn, Wedge, Blakey, Folsom & Hug, Reno, Nev., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada at Reno.
 Before ELY, TRASK and TANG, Circuit Judges.
 PER CURIAM:
 
 
 1
 This suit was brought by a former faculty member of the University of Nevada, Reno, after his employment contract was not renewed and he was denied tenure.
 
 
 2
 Ely Haimowitz, a piano instructor, was first hired by the University of Nevada, Reno (hereinafter the University), in August 1965 as an assistant professor of music. He taught for six years, until his dismissal in 1971. The dismissal was apparently precipitated by the recommendations of the chairman of the music department and the department's faculty tenure committee. The recommendation made to the dean of the college and the president of the University was that appellant not be retained. The University has not stated any reasons for nonrenewal.
 
 
 3
 Appellant argues that his dismissal was improper on several grounds. First, he alleges that he had a recognizable property and liberty interest that could not be taken from him without due process. Second, appellant argued that the failure to renew was the result of retaliation for his exercise of first amendment rights and religious bias.
 
 
 4
 The matter came before the district court where defendants' motion for summary judgment was granted. The district court concluded that appellant had not shown a property right or liberty interest so as to require a hearing on the nonrenewal of his contract. As to appellant's first amendment claim, the district court clearly stated that there were still disputed issues of fact regarding the reasons for his nonretention (C.T. at 177). But, the district court believed these reasons to be immaterial because the bias was alleged to have occurred at the advisory level only. This appeal followed.
 
 
 5
 * Appellant's due process arguments depend upon the finding of a constitutionally protected property interest in the expectation of continued employment, or a liberty interest infringed by the state. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Absent such an interest, no due process protections attach.
 
 
 6
 The University had a written tenure system. Appellant had not yet been granted tenure, which would have given him a recognizable property interest in continued employment. But, appellant contends that a property interest can be obtained if his expectation for continued employment was fostered by comments from school administrators, faculty guidelines, or some other source.
 
 
 7
 To support his position, appellant cites Perry v. Sindermann, supra, and Soni v. Bd. of Trustees of University of Tennessee, 513 F.2d 347 (6th Cir. 1975). Neither of these cases support the position urged here by appellant.
 
 
 8
 In Perry, supra, no written tenure system existed. In reversing a summary judgment granted the college, the Supreme Court recognized that a De facto tenure system might exist that would rise to the level of a protected property interest.
 
 
 9
 "We have made clear in Roth, supra, (408 U.S.) at 571-72, 92 S.Ct. 2701, that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' Id., at 577, 92 S.Ct. 2701. A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. Ibid."
 
 
 10
 Perry v. Sindermann, 408 U.S. at 601, 92 S.Ct. at 2699.
 
 
 11
 Haimowitz claims that the actions of several professors in the music department of the University give rise to a claim of De facto tenure or expectancy of continued employment. Appellant's position is that although he was aware of the University's established tenure system, he was given repeated assurances by members of the faculty, who would later be in a position to influence his tenure, that he was progressing well and that he would eventually receive tenure. Haimowitz urges that this factual situation creates the sort of protected interest in continued employment that Perry recognized and sanctioned as deserving of due process protection.
 
 
 12
 The difficulty with appellant's position is that he was at all times fully aware of his status as a probationary employee who could achieve tenure only in accordance with the published provisions of the University Code. The district court found that in view of Haimowitz's knowledge of the established tenure system, he could have had only a unilateral expectation of future employment. The district court held that even if the assurances Haimowitz allegedly received were deemed admitted, he could not have reasonably relied upon them to create a legitimate expectation of tenure or continued employment.
 
 
 13
 The entire thrust of formal tenure provisions is to standardize the process of faculty selection and employment security. In other words, formal tenure regulations are designed to avoid the De facto tenure problem recognized in Perry. Consequently, the existence of a formal code governing the granting of tenure precludes a reasonable expectation of continued employment absent extraordinary circumstances. The vast majority of cases considering claims of De facto expectations in the face of established tenure systems reject the idea that any protected interest may be created. See, e. g., Plummer v. Bd. of Regents, 552 F.2d 716 (6th Cir. 1977); Bertot v. School District No. 1, Albany County, Wyoming, 522 F.2d 1171 (10th Cir. 1975); Cusumano v. Ratchford, 507 F.2d 980 (8th Cir. 1974).
 
 
 14
 Appellant can cite only one case in which a claim of De facto tenure or De facto continued employment was sustained in the face of the existence of formal tenure regulations. In Soni v. Bd. of Trustees of University of Tennessee, supra, an alien faculty member was denied formal tenure because of a state statute prohibiting the granting of tenure to non-citizens. Nonetheless, the alien was assured that his position would be identical to that of a regularly tenured faculty member and that he would enjoy the same permanency. He was told that the action taken by the university on his tenure status was favorable even though the university could not formally extend an offer of tenure to him. Thereafter, Soni participated in the privileges and opportunities offered to tenured faculty members. These facts were held to create a property interest by virtue of a reasonable expectation of continued employment. Accordingly, due process was required in connection with Soni's termination.
 
 
 15
 Appellant here urges that his case presents the same factual situation as in Soni. Yet, the Soni case seems clearly distinguishable. Haimowitz was never led to believe that he had been granted a permanent position as had the teacher in Soni. Appellant here was only assured that he would be granted tenure when the time came and that his progress was satisfactory.
 
 
 16
 Moreover, Haimowitz was fully aware of his probationary status at all times. Additionally, Haimowitz was never granted the perquisites of tenure as in Soni. That the circumstances in Soni were singularly unique is borne out by the fact it is the only case of its type. Faced with similar De facto tenure claims, subsequent cases have consistently distinguished Soni and refused to extend its application. See, e. g., Plummer, supra; Wells v. Bd. of Regents, 545 F.2d 15 (6th Cir. 1976). The facts in this case, taken as alleged, do not give rise to a reasonable expectation of employment meriting protection as a property interest.
 
 
 17
 Haimowitz also claims that he had a protected "liberty" interest of which he was deprived without due process. He claims that the fact that he was not retained by the University, but was dismissed without stated reasons, has prevented him from obtaining other similar employment.
 
 
 18
 In determining whether an employee has been deprived of a liberty interest in the termination of employment, the crucial issue is whether the employer, in connection with the termination of the employee, including a refusal to rehire, makes a charge which might seriously damage the employee's standing and reputation. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Roth, supra; Stretten v. Wadsworth Veterans Hospital,537 F.2d 361 (9th Cir. 1976).
 
 
 19
 The Supreme Court stated in Roth, 408 U.S. at 574, 92 S.Ct. at 2708, n. 13:
 
 
 20
 "Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' " (citation omitted).
 
 
 21
 It is to be noted that Roth, like the present case, involved a dismissal or non-renewal where no reasons were given for the action. "Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character. But not every dismissal assumes a constitutional magnitude." Gray v. Union County Intermediate Education Dist., 520 F.2d 803, 806 (9th Cir. 1975) (citation omitted).
 
 
 22
 Haimowitz does not allege that the University in any way publicized false, defamatory, or stigmatizing statements about him in connection with his termination. In fact, no reasons at all were ever made public. His sole contention is that the mere fact of non-retention was sufficiently stigmatizing to implicate a liberty. But such a theory has not been accepted in case law, and we refuse to accept the theory here.
 
 II
 
 23
 Appellant's second claim is that members of his department recommended against his continued employment in retaliation for his exercise of first amendment rights. Despite the fact that appellant had no tenure, he still cannot be removed if his dismissal is predicated on his exercise of first amendment rights. Mt. Healthy City Board of Ed. v. Doyle,429 U.S. 274, 283-84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Perry v. Sindermann, 408 U.S. at 597-98, 92 S.Ct. 2694; Gray v. Union County Intermediate Education Dist., supra.
 
 
 24
 The Supreme Court has recently described the proper method for resolving claims of retaliatory termination in Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. at 287, 97 S.Ct. at 576:
 
 
 25
 "Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or, to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct."
 
 
 26
 Under this procedure, appellant should have been given the opportunity to show that his conduct was protected and that protected activity was the motivating factor in his nonretention. Here, appellant claims that the retaliation was caused by his complaints against several of the faculty members. Specifically, appellant alleges that the department chairman voted against him because appellant had reported the chairman to the dean of the college for changing a student's grade in return for a favor by that student. Another department member allegedly voted against appellant because he told a female student to report that department member's sexual advances toward her to the dean.
 
 
 27
 Under the Mt. Healthy decision, Haimowitz was deprived of an opportunity to demonstrate that his speech and actions were constitutionally protected. The balancing required by Pickering v. Bd. of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), mandates that the interests of the faculty member be balanced against the interests of the state employer in order to determine if the speech or action is constitutionally protected. As the Mt. Healthy case states, the faculty member must demonstrate that his conduct was constitutionally protected. There is nothing in the record to indicate that evidence permitting such a balancing was ever received, although there seems little doubt that the speech and conduct described by Haimowitz in his allegations was constitutionally protected. Additionally, the question of whether impermissible retaliation was a "motivating factor" was in genuine dispute, as was whether the department and ultimately the University would have reached the same result and recommendation in the absence of the protected conduct. Plainly, summary judgment was inappropriate.
 
 
 28
 The district court, and now the appellees, seek to avoid these genuine disputes by arguing that any retaliation was only at the advisory level. It is thought by the appellees that the improper bias is too far removed from the final decisionmaking to be of constitutional moment. Appellees have not cited any legal authority for their position. Rather, it appears that in cases where recommendations form the basis for the nonretention decision, this input is critical. For example, in Bertot v. School District No. 1, Albany County, Wyoming, 522 F.2d 1171, 1181 (10th Cir. 1975), the court said:
 
 
 29
 "The recommendation to the Personnel Committee, its recommendation to the Board, and the Board's reasons for non-renewal of her contract are of critical importance in deciding whether the action adverse to her was for the exercise of her constitutional rights."
 
 
 30
 See also Smith v. Losee, 485 F.2d 334, 336-40 (10th Cir. 1973), Cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).
 
 
 31
 The view expressed in these two cases is clearly more in tune with the practical realities of the decisionmaking process. The recommendation of the fellow members of a department will surely be a major, if not determinative, factor in the final employment or tenure decision.
 
 
 32
 The district court's granting of defendants' motion for summary judgment was improper and this matter is returned for fact finding on the merits.