Betty LaVERNE

v.

**UNIVERSITY OF TEXAS SYSTEM, Jon P. Newton, Tom B. Rhodes, Robert B. Baldwin, III, Janey Briscoe, Jess Hay, Beryl Buckley Milburn, James L. Powell, Howard N. Richards, Mario Yzaguirre, E. Donald Walker, University of Texas Medical Branch at Galveston, William C. Levin, John G. Bruhn, the State of Texas.**

Civ. A. No. G–83–313.

United States District Court,
S.D. Texas,
Galveston Division.

March 27, 1985.

William C. Bednar, Jr., Eskew, Muir & Bednar, Austin, Tex., Carmen A. Graham, Malloy & Graham, Dickinson, Tex., for plaintiff.

Mitchell J. Green, Asst. Atty. Gen., Austin, Tex., for defendants.

## ORDER

HUGH GIBSON, District Judge.

Before the Court are defendant's motion to dismiss, motions for summary judgment, and plaintiff's and defendant's replies.

Plaintiff, BETTY LaVERNE, instituted this 42 U.S.C. § 1983 action against the State of Texas, the University of Texas System and its Chancellor, the University of Texas Medical Branch at Galveston and its President, members of the Board of Regents, and the Dean of the School of Allied Health Sciences. Plaintiff alleged that the defendants violated her constitu-

tional rights to due process and equal protection by not renewing her contract of employment and denying her tenure status.

## I. MOTION TO DISMISS

Defendants seek dismissal of plaintiff's claim against the State, the University of Texas, and all defendant officials other than the President of the Galveston Medical Branch and the Dean of Allied Health, who approved the termination of plaintiff's employment.

■ The Eleventh Amendment constitutes a jurisdictional bar to civil rights claims asserted against the State and its agencies and, likewise, prohibits damage recovery against state administrators in their official capacity. *See United Carolina Bank v. The Board of Regents of Stephen F. Austin State University*, 665 F.2d 553 (5th Cir.1982).

■ With regard to the individual defendants, vicarious liability cannot support a section 1983 claim, *see Daly v. Sprague*, 675 F.2d 716 (5th Cir.1982), *cert. denied*, 460 U.S. 1047, 103 S.Ct. 1448, 75 L.Ed.2d 802 (1983); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983). The defendants have established that the Chancellor and members of the Board of Regents had no direct involvement in the termination of plaintiff's employment. Accordingly, the Court concludes that defendants' motion to dismiss must be GRANTED.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. *Due Process:*

■ The primary and controlling issue in plaintiff's due process claim is whether plaintiff has acquired "tenure" with the Employer University. To resolve this issue, the Court will look at the undisputed facts established by the record, and the University's rules and regulations as summarized below:

In 1972, the University appointed plaintiff as Coordinator of the Core Education in Health Occupation Program. The program, a joint effort between the Galveston Community College (GCC) and the School of Allied Health Sciences of the University of Texas Medical Branch (UTMB), trains students for health-related occupations, using facilities and instructional services provided by UTMB but funded by GCC.

From 1973 to 1982, plaintiff received annual appointment to this position or in a similar capacity by UTMB. However, 100 percent of her salary was funded by GCC. Plaintiff occupied this position at the academic rank of Instructor until the academic year 1979–80, when UTMB promoted her rank to that of an Assistant Professor. Plaintiff admitted in her deposition (pp. 62–70) that some time prior to 1980, she received tenure from GCC. Plaintiff has not proved that UTMB officials have ever, by affirmative acts, recognized her as a tenured faculty member.

The University of Texas "Board of Regents" Rules specify the conditions and procedures for acquiring tenure, defined as "a status of continuing appointment as a member of the faculty" at the University. *See* Regents' Rule 6.2. This rule also provides that only members of the faculty with the academic titles of Professor, Associate Professor, or Assistant Professor may be granted tenure. Rule 6.21 provides further that only full-time service shall be counted toward fulfillment of a required probationary period related to the acquisition of tenure. The maximum period of probationary faculty service in non-tenured status in any academic rank or combination of ranks shall not exceed seven years. Regents' Rule 6.23. At the end of the sixth year, the University, by its own regulations, is forced to make a choice either to "tenure" the faculty member or simply terminate his or her employment at the conclusion of the seven-year probationary period. No later than August 31 of the sixth year, the University is obligated to provide the employee with notice of its choice, commonly referred to as the "up or out" notice. *See* Regents' Rule 6.23 and Dr. Levin's deposition, pp. 12–14.

In 1980, the School of Allied Health Sciences officially came under the tenure rule and retroactively granted tenure to eight faculty members who had satisfied their probationary service. The Dean instructed the Departmental Chairman that these faculty members would "receive notification through their letter of appointment that tenure ha[d] been granted to them effective September 1, 1980." (See Dr. Bing's letter of June 8, 1980). Plaintiff was not one of these eight faculty members. Nor did her annual reappointment for the academic years 1980–81, 1981–82, and 1982–83 contain any discussion of tenure. Plaintiff, nonetheless, accepted the reappointment without inquiring into her tenure status through the appropriate authority (see plaintiff's deposition pp. 88–92).

In December, 1982, plaintiff was notified by the Departmental Chairman that she would not be reappointed for the academic year 1983–84. Plaintiff then met with the Chairman and subsequently, the Dean, who informed plaintiff that until 1981, plaintiff was considered a part-time, without salary (WOS), employee of UTMB and, therefore, did not qualify for tenure (see David Cardova's letter of December 16, 1982.) Plaintiff vigorously disputed this determination.[1]

■ The applicable Regents' Rules contain the following provisions:

"6.(10) Reappointment of nontenured members of the faculty to a succeeding academic year ... or the award of tenure, ... may be accomplished only by notice by the chief administrative officer of a component institution or his delegate with the approval of the Board. *Notwithstanding any provisions ... to the contrary, no person shall be deemed to have been reappointed or to have been awarded tenure ... because notice is not given or received by the time prescribed ...* Should it occur that no notice is received by the time prescribed *... it is the duty of the academic employee concerned to make inquiry* to determine the decision of the chief administrative officer of a component institution, who shall without delay give the required notice to the academic employee." (*Emphasis added.*)

"6.(25) All faculty appointments are subject to the approval of the Board. No nontenured member of the faculty should expect continued employment beyond the period of his or her current appointment as approved by the Board. Any commitment to employ a nontenured member of the faculty beyond the period of his or her current appointment shall have no force and effect until approved by the Board."

Thus, under the applicable rules, there is no tenure by default, *de facto* or "common law" tenure. The Court concludes as a matter of law that plaintiff was not a tenured employee. Where a university has published written procedures governing tenure, the legitimacy of a claim to tenure acquired outside the procedures is vitiated because there is no basis for mutuality. *Scagnelli v. Whiting*, 554 F.Supp. 77, 80 (M.D.N.C.1982). Absent an entitlement to continued employment, plaintiff's unilateral expectation falls short of a property right which triggers procedural due process. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Johnson v. San Jacinto Jr. College*, 498 F.Supp. 555, 569 (S.D.Tx.1980).

The Court is not persuaded that the denial of tenure and the non-renewal of plaintiff's appointment alone creates stigma which implicates a deprivation of plaintiff's liberty interest. Plaintiff has failed to

---

**1.** The plaintiff has more than adequately raised disputed facts on whether the University has, by admission, recognized her as a full-time UTMB employee. Although full-time status is significant in determining when one becomes eligible for tenure, it does not in itself create tenure status. In light of Regent's Rules 6.10 and 6.25 quoted herein, the Court concludes that whether plaintiff was a full time employee was not sufficiently material to defeat summary judgment on the due process issue.

demonstrate that defendants published causes for her discharge that are both false and stigmatizing. *See Wells v. Hico I.S.D.,* 736 F.2d 243, 256 (5th Cir.1984); *Wells v. Doland,* 711 F.2d 670, 676, n. 8 (5th Cir. 1983); *Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir.1979); *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977).

### B. *Equal Protection*

■ Defendants' second motion attacks plaintiff's equal protection claim, alleging that their decision to deny plaintiff tenure was based on a rational and reasonable basis. Among the reasons cited for the denial was that plaintiff was the only faculty member who had been tenured through the GCC (see Robert Bing's affidavit). Although plaintiff vehemently argued her subjective understanding of this tenure grant, the fact remains undisputed that plaintiff was the only faculty member seeking a "double-tenure" status.

In cases that do not involve a suspect class or a fundamental interest, a classification will be upheld if it has some reasonable basis. *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Wells v. Doland,* 711 F.2d 670 (5th Cir.1983); *Goodisman v. Lytle,* 724 F.2d 818 (9th Cir.1984). The undisputed fact that plaintiff has received tenure through the GCC is reasonably sufficient to support the University's disparate treatment. The Court concludes that the defendants' refusal to grant tenure to an employee who has been tenured by another post-secondary institution in the same vicinity is not arbitrary and capricious so as to offend equal protection.

For the reasons stated above, it is ORDERED, ADJUDGED and DECREED that:

1. defendants' motion to dismiss is GRANTED;

2. defendants' motions for summary judgment are GRANTED.