Jimmie L. **MARTIN** d/b/a J & L Services, Eddie M. Haynes d/b/a Twilite Recovery Service, Morse's Auto Salvage and Tow Service, Inc., Leslie L. Morse, Sr., John W. Morse, and Robert L. Morse, Plaintiffs,

v.

Marvin V. **STITES**, Linn County Sheriff, Martin J. Read, Harold J. Mooney, Jr., and Charles Trask, Linn County Board of County Commissioners, and Dean Schoenhals d/b/a Northside Auto, Defendants.

No. Civ.A. 98–2226–GTV.

United States District Court, D. Kansas.

Nov. 16, 1998.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, for Jimmie L. Martin, Eddie M. Haynes, Morse's Auto Salvage, Inc., Leslie L. Morse, Sr., John W. Morse, Robert L. Morse.

James D. Griffin, Jana V. Richards, Blackwell Sanders Peper Martin, LLP, Overland Park, KS, for Marvin V. Stites, Martin J. Read, Harold J. Mooney, Jr., Charles Trask.

Patrick E. McGrath, Glenn S. Grayson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Dean Schoenhals.

## MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

Plaintiffs Jimmie L. Martin d/b/a J & L Services, Eddie M. Haynes d/b/a Twilite Recovery Service, Morse's Auto Salvage and Tow Service, Inc., Leslie L. Morse, Sr., John W. Morse, and Robert L. Morse claim that defendants Sheriff Marvin V. Stites, Linn County Commissioners Martin J. Read, Harold J. Mooney, Jr., and Charles Trask, and Dean Shoenhals d/b/a Northside Auto violated 42 U.S.C. § 1983 and federal antitrust laws, 15 U.S.C. §§ 1 & 2, when they conspired to restrain trade in the tow truck referral market in Linn County, Kansas. The case is before the court on defendants Stites, Read, Mooney, and Trask's motion to dismiss (Doc. 8) for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part as follows:

1. the motion is granted as to plaintiffs' antitrust claims (Count I) seeking damages from defendants Stites, Read, Mooney, and Trask in their individual and official capacities;

2. the motion is denied as to plaintiffs' antitrust claims (Count I) seeking injunctive relief;

3. the motion is denied as to plaintiffs' § 1983 claims (Counts II, III, and V); and

4. the motion is granted as to plaintiffs' § 1983 claims for punitive damages against defendants in their official capacities.

### I.  Factual Background

The relevant allegations of plaintiffs' complaint are as follows.  During a regular session of the Linn County Board of County Commissioners on December 22, 1997, the defendant board members and Sheriff Stites adjourned to a private executive session to create a towing policy for Linn County that would restrain trade in the tow truck referral market to the benefit of the attendees of the meeting and defendant Schoenhals.  The new policy also benefitted Schoenhals in exchange for his provision of free or discounted tow service to the county.

As a result of this executive session, the county counselor announced that, under the new policy, the county would only use tow services that had filed an application for county tows and that had been approved by the board of county commissioners.  Once a company filed an application and received approval from the board, Sheriff Stites required the company to meet specific criteria to be eligible for tow calls in Linn County. Sheriff Stites required that tow operators be able to respond within forty-five minutes of any call, to receive such calls by telephone, and to be available for a designated three-day rotation.  Under this rotation system, each company, during its rotation period, would be called by the sheriff's department upon the discovery of a vehicle in need of towing unless customer preference or an emergency situation dictated otherwise. Plaintiffs and defendant Schoenhals were qualified under the above criteria and, therefore, should have received equal "non-preference" towing calls.  In practice, however, most non-preference calls and emergency and service calls from Linn County deputies were and are directed to Schoenhals by order of Sheriff Stites.

The county commissioners and Sheriff Stites held a second private executive session on February 9, 1998.  As a result of this session, the board reported that the provision of towing services in Linn County was to be divided into western and eastern service areas.  Towing service for the west side of the county was to be supplied by Morse Auto Salvage.  Service on the east side of the county was to be divided on a rotational basis between Twilite Recovery Service, owned by plaintiffs Martin and Haynes, and Northside Auto, owned by defendant Schoenhals.  Approximately 80 percent of all wrecker calls are for service in the eastern half of the county.  Of this 80 percent, most calls are sent by the Sheriff's department to Schoenhals.

Plaintiffs also contend that defendants have manipulated the towing policy in order to direct all "large wrecker" service calls to Schoenhals.  Large wrecker service, because

it involves towing large interstate transport vehicles, is often more lucrative than smaller vehicle tows. Plaintiff Morse owned a large wrecker service, and although he did not own a large wrecker, he had access to one through a Lawrence, Kansas affiliate. Plaintiffs Martin and Haynes were also prepared to provide large wrecker service, but did not own their own large wrecker. On March 2, 1998, plaintiff Morse asked the board to approve an application for a county towing service permit for an out-of-county tow company that owned a large wrecker. Such a permit would have allowed Morse to affiliate with this out-of-town company and to compete in the Linn County large wrecker service market. The board refused to approve the application, stating that only local tow trucks were to be used under the new policy, and informed Morse that challenges to the towing policy should be directed to Sheriff Stites.

As a result of the above events, plaintiffs have spoken critically about Sheriff Stites and the county commissioners and refused to support them politically. Due to these actions, defendants retaliated against plaintiffs by effectively removing plaintiffs from the Linn County tow referral list and by blocking plaintiffs' entry into the large wrecker service market.

## II. Legal Standards

In ruling on a motion to dismiss, the court accepts the veracity of all well-pleaded facts in the plaintiffs' complaint and views both the facts and all reasonable inferences in the light most favorable to the plaintiffs. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The pleadings must be construed liberally. *Gas-A-Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102 (10th Cir.1973); *see* Fed.R.Civ.P. 8(a), (f). The issue in reviewing the sufficiency of a complaint is not whether the plaintiffs ultimately will prevail, but whether the plaintiffs will be allowed to offer evidence to bolster the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The court may not dismiss a case for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fuller v. Norton,* 86 F.3d 1016, 1020 (10th Cir.1996).

## III. Discussion

### A. Federal Anti–Trust Claims (Count I)

Plaintiffs allege that defendants violated federal antitrust law by conspiring to restrain trade in the tow truck referral market in Linn County, Kansas. *See* 15 U.S.C. §§ 1 and 2. Plaintiffs assert claims against defendants Stites, Read, Mooney, and Trask in their individual and official capacities. Plaintiffs seek treble damages, costs, attorney fees, a preliminary and permanent injunction, and other relief the court deems proper. Defendants argue that plaintiffs' antitrust claims must be dismissed because the Local Government Antitrust Immunity Act of 1984, 15 U.S.C. § 34 *et seq.,* does not permit plaintiffs to recover monetary damages from defendants in their official capacities and because plaintiffs have failed to state a claim against defendants in their individual capacities. Defendants also argue that plaintiffs' request for injunctive relief must be denied because it is overly broad and because plaintiffs' legal remedy is adequate.

#### 1. Claims seeking damages from defendants acting in their official capacity

Plaintiffs concede that the Local Government Antitrust Immunity Act of 1984, 15 U.S.C. § 35(a), precludes damages assessments against defendants acting in their official capacity. Accordingly, plaintiffs' claims seeking damages from defendants in their official capacities are dismissed.

#### 2. Individual capacity claims

Plaintiffs claim that defendants, in their individual capacities, violated sections 1 and 2 of the Sherman Antitrust Act. Section 1 makes unlawful "any contract, combination ... or conspiracy, in restraint of trade or commerce among the several states...." 15 U.S.C. § 1. Under section 2, it is illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade

or commerce among the several states . . . ." 15 U.S.C. § 2. Defendants do not directly contest plaintiffs' allegations. Rather, they assert that, pursuant to section 35 of the Local Government Antitrust Act ("LGAA"), they are individually immune from antitrust claims for money damages.

■ "Congress enacted the [LGAA] in order to broaden the scope of antitrust immunity applicable to local governments." *Sandcrest Outpatient Servs., v. Cumberland Co. Hosp. Sys., Inc.*, 853 F.2d 1139, 1142 (4th Cir.1988); *see also Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1564 (10th Cir. 1991). Accordingly, under the LGAA, "[n]o damages . . . may be recovered . . . from any local government, or official or employee thereof· acting in an official capacity." 15 U.S.C. § 35(a). The question before the court is whether defendants were acting in an official capacity when they performed the complained of acts.

■ "[T]he phrase 'acting in an official capacity' includes those lawful actions, undertaken in the course of a defendant's performance of his duties, that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his position." *Sandcrest*, 853 F.2d at 1145. This definition is consistent with the LGAA's legislative history which states that "[t]he intent of [this] provision is to insure that local government officials performing their normal, lawful functions will not be personally responsible for damages when the local government itself is not." S.Rep. No. 593, 98th Cong., 2d Sess. 8 (1984).

Plaintiffs claim that defendants were not acting in an official capacity when they sought to restrain trade in interstate commerce and to control the Linn County tow service market. Specifically, plaintiffs argue that defendants were participants in a conspiracy to benefit defendant Schoenhals in exchange for his political support of the sheriff and for "various gratuities and free services" he provided to the county. (*See* Complaint ¶ 38.) Because this conspiracy was politically and financially motivated, plaintiff claims that defendants, in performing acts in furtherance of the conspiracy, could not have been acting in an official capacity. The court disagrees.

■ The standard for determining whether defendants were acting in an official capacity is solely an objective one. *See Sandcrest*, 853 F.2d at 1148. "The LGAA makes no provision for consideration of a defendant's motives." *Id.* at 1146. If courts were to consider subjective arguments concerning a defendant's motivations, "the fundamental purpose underlying the LGAA's immunity provision would be substantially undercut." *Id.* For this reason, plaintiffs' arguments fail to save the damages claims from dismissal. Plaintiffs argue that defendants' motives for performing the complained of acts were improper; however, they fail to show that the actual acts performed were outside the scope of authority of the sheriff and the board of county commissioners. The court concludes that creating towing policies, conducting board meetings, and calling tow services to aid stranded vehicles are activities falling within defendants' official capacities. Accordingly, plaintiffs' claims for damages against defendants in their individual capacities are barred by the LGAA, and are dismissed.

### 3. Plaintiffs' request for injunctive relief

In their prayer for relief, plaintiffs request "a preliminary injunction prohibiting any further hindrance of plaintiffs' business, and for such other relief and further relief as the Court deems just and proper." Defendants contend that the court should dismiss the remainder of Count I seeking injunctive relief because plaintiffs' request for injunctive relief is overly broad and because plaintiffs have an adequate legal remedy.

■ Fed.R.Civ.P. 54(c) provides in pertinent part that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." "The question is not whether plaintiff[s] asked for the proper remedy but whether [they are] entitled to any remedy." 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2664 (1983).

Therefore, a complaint should be dismissed for failure to state a claim only when the allegations of the complaint, and not the prayer for relief, fail to state a claim upon which relief may be granted. Although the relief requested in the instant case may be overly broad, the court will not dismiss a claim under Fed.R.Civ.P. 12(b)(6) as long as it can ascertain from the face of the complaint that some relief can be granted. Here, the complaint demonstrates that plaintiffs may be able to prove a set of facts that would entitle them to injunctive relief.

Defendants also argue that plaintiffs' request for injunctive relief should be denied because plaintiffs have an adequate remedy at law. The court acknowledges that injunctive relief should not be granted where the injured party has an adequate remedy at law; however, it would be premature to deny plaintiffs' request for injunctive relief at this juncture. The court concludes that plaintiffs may be able to prove a set of facts establishing that they have no adequate remedy at law.

### B. Section 1983 Claims

Plaintiffs also bring this action pursuant to 42 U.S.C. § 1983 claiming violations of their First and Fourteenth Amendment rights and a conspiracy by defendants to violate plaintiffs' civil rights. Plaintiffs' Fourteenth Amendment claims allege a deprivation of constitutionally protected property and liberty interests without due process.

#### 1. Fourteenth Amendment Claims

The Fourteenth Amendment's guarantee of procedural due process applies when a constitutionally protected property or liberty interest is at stake. As the United States Supreme Court has long held:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of hearing is paramount.

*Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To state a claim for a Fourteenth Amendment due process violation, plaintiffs must claim that they were denied a constitutionally protected property or liberty interest without due process. *See id.* at 569–70, 92 S.Ct. 2701.

#### a. Property Interests (Count II)

Plaintiffs claim that defendants deprived them of protected property interests without due process. Specifically, plaintiffs claim that Sheriff Stites removed plaintiffs, actually or effectively, from the tow list by referring all or almost all tow calls to defendant Schoenhals.

An interest in property arises only when there is a legitimate claim of entitlement; a mere abstract need for or unilateral expectation of a particular benefit is insufficient to create a property interest. *Id.* at 577, 92 S.Ct. 2701. Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings. *See Perry v. Sindermann*, 408 U.S. 593, 601–602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Jones v. University of Central Oklahoma*, 13 F.3d 361, 363–64 (10th Cir.1993). In this case, the existence of a property interest is an issue governed by Kansas state law. *See Dickeson v. Quarberg*, 844 F.2d 1435, 1438 n. 5 (10th Cir.1988).

Plaintiffs claim their placement on the Linn County towing referral list created a protected property interest in remaining on the list. For this proposition, plaintiffs rely on case law from the Tenth and Fourth Circuits. *See Pritchett v. Alford*, 973 F.2d 307 (4th Cir.1992); *Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir.1990). In *Abercrombie*, the plaintiff, the owner of a wrecker service, was removed from the City of Catoosa, Oklahoma's wrecker referral list without notice. The Tenth Circuit determined that Oklahoma state statutes required "the City of Catoosa to make wrecker service referrals on an equal basis as nearly as possible and thus created a property interest in wrecker referrals in favor of the plaintiff." *Id.*

In *Pritchett,* the Fourth Circuit held that a wrecking service had a constitutionally protected property right that prevented its removal from the South Carolina State Highway Department's wrecking service rotation list without notice. 973 F.2d at 317–18. In that case, the court found that a state regulation required maintenance of the list:

> [T]he regulations required every highway patrol district to establish wrecker zones and "wrecker-rotation" lists for the zones ... and directed that the lists should be administered fairly and in a manner designed to ensure that all wrecker services on the list have an equal opportunity to the towing business arising from the rotation list.

*Id.* at 317.

Defendants argue that *Abercrombie* and *Pritchett* are distinguishable. The *Abercrombie* and *Pritchett* courts concluded that a constitutionally protected property had been created because a state statute or regulation created a property interest in the plaintiff towing operator. In the instant case, there is no Kansas state law or regulation governing towing or wrecker services.

While the court agrees that no Kansas statute controls the Linn County towing policy, granting defendants' motion to dismiss would be premature. The Kansas legislature has granted county commissioners broad home rule powers "to transact all county business and perform all powers of local legislation and administration it deems appropriate" subject to enumerated restrictions. K.S.A.1997 Supp. 19–101a. Plaintiffs have alleged that the Linn County Board of County Commissions passed a regulation creating the application procedures and towing policy. The court concludes that plaintiffs may be able to prove a set of facts establishing that the county towing policy had the force of law and, therefore, created a constitutionally protected property interest. Furthermore, nothing in the record suggests that plaintiffs received any process prior to the alleged deprivation. Accordingly, defendants' motion to dismiss is denied as to Count II.

### b. Liberty Interests (Count III)

■■■■ Plaintiffs also claim that defendants have deprived them of constitutionally protected liberty interests without due process. "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable government interference comes within the 'liberty' and 'property' concepts of the Fifth [and Fourteenth] Amendment[s]." *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

Plaintiffs claim that defendants have denied them the "right" to operate wrecker businesses in Linn County. According to plaintiffs, defendants have denied protected liberty interests by removing them, actually or effectively, from the towing referral list and refusing to allow plaintiffs to compete in the Linn County large wrecker service market. If plaintiffs do not receive a portion of referral calls from the Linn County Sheriff's Department and are not allowed to compete in the large wrecker market, plaintiffs claim that they will be forced to go out of business.

Defendants contend that, even if plaintiffs' allegations are true, plaintiffs' claims must be dismissed because all plaintiffs are currently in business and will not go out of business in the future. While these statements may be accurate, the pleadings and record before the court do not justify granting defendants' motion to dismiss. The court, therefore, concludes that plaintiffs have adequately claimed that a protected liberty interest has been deprived. Again, nothing in the record suggests that plaintiffs received any process prior to the alleged deprivation. Accordingly, defendants' motion to dismiss is denied as to Count III of plaintiffs' complaint.

### 2. Conspiracy Claims (Count V)

■■■■ Plaintiffs also claim that all defendants engaged in a conspiracy to violate their constitutional rights in violation of § 1983. In order to succeed on this claim, plaintiffs must allege both the existence of a conspiracy and the deprivation of a constitutional right. *See Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990). As stated above, plaintiffs have pleaded the deprivation of a constitutional right. To prove a conspiracy between private parties and state

actors under § 1983, plaintiffs must show a joint participation, agreement, or meeting of the minds to violate constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142, (1970). Each element of civil conspiracy, including the individual defendants' involvement in the conspiracy, must be pleaded with some specificity. Plaintiffs must make more than conclusory allegations of the existence of a conspiracy; they must set forth some supporting factual details in order to sustain a claim for relief. *See, e.g., Drake v. City of Fort Collins*, 927 F.2d 1156, 1159, 1162–63 (10th Cir. 1991) (conclusory allegation of conspiracy in connection with adverse employment action insufficient to state a claim under S 1985(3)).

 The court concludes that plaintiffs have adequately stated a claim alleging a conspiracy by defendants Stites, Read, Mooney, and Trask to violate plaintiffs' First and Fourteenth Amendment rights. In their complaint, plaintiffs allege the specific dates that these defendants met to allegedly conspire. Furthermore, plaintiffs' allegations adequately show defendants Stites, Read, Mooney, and Trask's involvement in the alleged conspiracy. Accordingly, defendants' motion to dismiss is denied as to Count V.

*4. Punitive Damages*

Plaintiffs seek punitive damages against defendants in their individual and official capacities. Defendants argue that plaintiffs cannot recover punitive damages against any defendant to the extent he is sued in his official capacity. Plaintiffs concede this point. Accordingly, plaintiffs' claims for punitive damages against defendants in their official capacity are dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion to dismiss (Doc. 8) is granted in part and denied in part as follows:

1.  the motion is granted as to plaintiffs' antitrust claims (Count I) seeking damages from defendants Stites, Read, Mooney, and Trask in their individual and official capacities;

2.  the motion is denied as to plaintiffs' antitrust claims (Count I) seeking injunctive relief;

3.  the motion is denied as to plaintiffs' § 1983 claims (Counts II, III, and V);

4.  the motion is granted as to plaintiffs' § 1983 claims for punitive damages against defendants in their official capacities.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**