**BRUMFIELD TOWING SERVICE, INC. et al.**

v.

**The CITY OF BATON ROUGE, et al.**

**Civil Action No. 95–1665–A.**

United States District Court, M.D. Louisiana.

Jan. 4, 1996.

---

Nancy James Goodwin, Baton Rouge, Louisiana, for Plaintiffs.

Georgia Gay Wilemon, Frank J. Gremillion, City of Baton Rouge—East Baton Rouge Parish Attorney's Office, Baton Rouge, Louisiana, for City of Baton Rouge,

Parish of East Baton Rouge, Tom E. McHugh, Mayor–President, Baton Rouge Police Department, Greg Phares, Chief of Police.

Winston W. Riddick, Sr., Riddick & Associates, Inc., Baton Rouge, Louisiana, James F. Abadie, Baton Rouge, Louisiana, for Roadrunner Towing & Recovery.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

### FINDINGS OF FACT

The court takes judicial notice that perfection of the internal combustion engine and mounting that engine upon a carriage, thus producing the motor vehicle, is among the most important "advances" in human history. However, when motor vehicles crash into each other, or pedestrians or into bridges, railings or other fixed objects, they cause problems not only for the owners and occupants of the motor vehicles and pedestrians but also for society as a whole. Over and above the injuries and fatalities caused by such crashes, when motor vehicles become disabled upon the public streets and highways, they present traffic hazards in and of themselves. They also retard and sometimes completely halt the flow of traffic upon those streets and highways. Since every occupant of a motor vehicle in the United State insists upon moving from wherever he or she is, to some other place as rapidly as possible, it is imperative that obstructions to the flow of vehicular traffic be eliminated with dispatch.

In the City of Baton Rouge, Louisiana, the responsibility for enforcing traffic regulations, including the removal of disabled motor vehicles from the streets and highways, rests upon the police department. In fulfillment of that responsibility, the Chief of Police of the City of Baton Rouge has entered contracts with tow truck operators to provide towing services in designated zones of the City and an additional contract to provide "heavy duty" towing throughout the City.

Plaintiffs in this litigation seek a declaratory judgment that those municipal contracts

are invalid because they violate numerous federal and state laws. Plaintiffs have moved for a preliminary injunction against execution of those contracts.

The matter has been tried upon the motion for a preliminary injunction. Intervenor, Roadrunner, Towing and Recovery, Inc., has filed a motion to dismiss for failure to state a claim. In view of the court's disposition of the motion for injunction, the motion to dismiss is hereby DENIED.

Plaintiffs in this action are Brumfield Towing Service, Inc., Stephens Towing Service, Inc., Victor J. Brumfield, individually, and Stephen P. Brumfield, individually. Victor Brumfield is a stockholder member of the Board of Directors and managing vice president of Brumfield Towing Service, Inc. and Stephen P. Brumfield owns and operates Stephens Towing Service, Inc.

Defendants are the City of Baton Rouge (incorrectly referred to as "The City of Baton Rouge–Parish of East Baton Rouge"), the Baton Rouge Police Department (a division of local government which is not a legal entity capable of suing or being sued), the Mayor–President of the City of Baton Rouge and the Parish of East Baton Rouge, and the Chief of Police of the City of Baton Rouge. Since all named defendants other than the City of Baton Rouge would be bound by and subject to any injunction issued against activities of the City itself, all the other defendants are superfluous and they are *sua sponte* hereby dismissed.

Intervenor is Roadrunner Towing and Recovery, Inc., one of the tow company operators who has contracted with the City to provide towing services.

The City of Baton Rouge, like virtually every other local governmental unit in the country, has, for many years, regulated tow truck operators. The City by ordinance has regulated licensing, minimum equipment requirements, storage facilities, and other requirements, as well as pricing regulations. Over the years the competition among tow truck operators for the service of removing disabled vehicles and vehicles impounded by the police department from the public streets has been intense. The City, whose primary

objective is to clear the public streets for movement of vehicles and pedestrians, has tried many different approaches.

As might be expected, most persons who are involved in traffic accidents in Baton Rouge resulting in disabled vehicles, have no preference regarding which truck operator will remove their disabled vehicles. One of the methods utilized by the city police department has been what is known as an "unspecified list." The "unspecified list" is simply a list of tow truck operators who wish to receive calls from the police department to pick up disabled vehicles and the police department has, at times, utilized a rotation system of calling tow trucks for owners of disabled vehicles who have no preference. The tow truck operators, of course, have persistently claimed that the police officers assigned to that duty have not fairly and properly operated the rotation system.

In November of 1992, the City of Baton Rouge adopted Ordinance No. 9533 which amended the existing ordinance regulating automobile emergency and heavy duty towing companies, to become effective January 1, 1993. That ordinance continued the policy of utilizing the "unspecified list" as well as an "official storage list." The "official storage list" was used to call for towing services to an official storage yard which holds vehicles impounded by the police department. There were 28 to 30 tow truck operators on those lists.

Both tow truck operator plaintiffs were on those lists and both derived a substantial percentage of their total business from towing and storing vehicles owned by persons who had no preference as to towing companies.

In addition to specifying response times, size and condition of storage facilities and other standards, the ordinance legislated maximum prices for towing and storage.

Subsequently, two tow truck operators (neither of which is a party to this litigation) challenged Ordinance No. 9533 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. That court, in No. 413,660, Towing and Recovery Professionals of La., Inc., et al. v. City of Baton Rouge, et al., held that pricing provisions of the local ordinance were preempted by congressional adoption of an act known as the Federal Aviation Administration Authorization Act of 1994 (FAAAA). The City of Baton Rouge apparently accepted that district court determination and made no attempt to secure appellate review at any level.

The result of the demise of Ordinance No. 9533 can best be described as chaos. The city police, for a time, attempted to continue to make calls from the "unspecified list" but soon found that to be impossible. They also found that tow truck operators were charging the helpless owners of disabled vehicles exorbitant, outrageous prices to remove the vehicles.

In an attempt to bring some order out of the chaos, the City, on May 24, 1995, adopted Ordinance No. 10297 which amended Ordinance No. 9533 (only the pricing provisions of that ordinance were declared preempted). Although the new ordinance itself is not very clear, all parties to agree that the ordinance authorized the chief of police to solicit bids from tow trucks operators and to award one or more contracts to one or more towing operators to provide all "unspecified tows" occurring in the city for prices specified in such contract or contracts. Where the owner or driver of the vehicle does have a preference, the police officer on the scene is required to honor that request.

The new ordinance, as an alternative to seeking bids from private vendors, also authorized the chief of police, "to obtain wrecker trucks and perform his own towing and official storage." Ord. 10297, Sec. 14(1). The chief did not utilize that option: the City of Baton Rouge owns and operates no tow trucks and is not in competition for towing services with plaintiffs or any other tow truck operators in the area.

Pursuant to the ordinance, the chief of police solicited bids from all licensed tow truck operators in the city, including both plaintiff tow truck operators, for the provision of such services. About a dozen tow truck operators submitted bids, including plaintiffs. The chief of police tabulated and reviewed all bids submitted, reviewed equipment and storage facilities as well as pricing

provisions, and entered contracts with tow truck operators including intervenor, Roadrunner, but not including plaintiffs, to provide towing services for impounded vehicles and for disabled vehicles where the owner or driver has no preference for a provider of towing services.[1] Each contract became effective on August 1, 1995, and is for a contract term of twelve months with an option by the City to extend the term for two additional years.

Plaintiffs promptly filed this action.

## CONCLUSIONS OF LAW

### Jurisdiction and Standing

The court has federal question jurisdiction under 28 U.S.C. § 1331 and § 1337. The court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

The plaintiffs must show that they have been or are being injured, in fact, and that their injury is redressable, to have standing to sue. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The evidence presented to the court makes it clear that plaintiffs are each losing business and thus suffering actual injury because of the contracts entered into between the City of Baton Rouge and the tow truck operators. A ruling favorable to plaintiffs would redress this injury; thus plaintiffs have standing to sue.

### Anti-trust Claims

The anti-trust claims of plaintiffs are based on §§ 1 & 2 of the Sherman Act, 15 U.S.C. § 1 et seq. Section 1 provides, in part, "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce ... is declared to be illegal", while 15 U.S.C. § 2 makes it a felony to monopolize or to attempt to monopolize, or to attempt or conspire to monopolize any part of interstate or international commerce.

Plaintiffs' complaint, as amended, alleges that the actions of the City of Baton Rouge and the tow truck operators with whom it has contracted constitute a "contract[2] or combination to fix prices in restrain of trade", in violation of § 1, as well as an attempt to monopolize the provision of towing and wrecker services in Baton Rouge in violation of § 2.

Plaintiffs also allege anti-trust violations under the virtually identical provision of state law.

Initially, plaintiffs must establish that activities having a substantial connection with interstate commerce are involved in this litigation in order to trigger application of the Sherman Act. Although this court entertains considerable doubt that evidence could be produced (none was offered at the trial) which would establish that the purely local activity of towing a motor vehicle from one place in the City of Baton Rouge to another place in the same city amounts to interstate commerce, the court will assume for purposes of this motion that such activities could amount to "a sufficient intrusion into the interstate market place to implicate the Sherman Act". *Cowan v. Corley*, 814 F.2d 223, 226 (5th Cir.1987) (holding that allegations of complaint were sufficient to defeat motion to dismiss for failure to state claim because of interstate and other federal highways running through municipality).

Lawyers and judges sometime get so caught up in anti-trust liturgy, with its exotic incantations ("per se violations", "rule of reason", "relevant markets", "tying arrangements", and so forth) that we tend to lose sight of the relatively simple and basic proposition that the Sherman Act is directed against activities which hamper the free market by restraint of trade. Activities which do not restrain trade are simply unaffected by the anti-trust laws. This is such a case.

The ordinance and contracts at issue here are not activities about which the Sher-

---

1. The city pays for towing impounded vehicles while the owners or drivers of disabled vehicles pay those towing charges.

2. The original complaint alleged that the City of Baton Rouge engaged in a "conspiracy" in viola-

tion of § 1 of the Sherman Act. All conspiracy allegations were deleted by the amended complaint, filed after trial of the motion for preliminary injunction.

man Act is concerned because they impose no restraint of trade.

Plaintiffs claim violations of the Sherman Act because the contracts amount to "a contract and combination to fix prices in restraint of trade."

It is undisputable that, literally, the contracts entered by the city with the successful bidders do "fix prices". They fix the prices to be paid between the contracting parties, but only between the contracting parties. As Justice White observed in *Broadcast Music, Inc. v. Columbia Broadcasting*, 441 U.S. 1, 9, 99 S.Ct. 1551, 1557, 60 L.Ed.2d 1 (1979):

"... Literalness is overly simplistic and often over broad. When two partners set the price of their goods or services, they are literally 'price fixing,' but they are not per se in violation of the Sherman Act." (Citations omitted)

In a literal sense, prices are "fixed" constantly in our daily lives. Every time one makes an offer to buy or sell a product or service, a price for that product or service is "fixed", whether it be for a single ball of twine or for one hundred thousand barrels of oil. A person offers to mow a lawn for twenty dollars. The owner says that's too much but that he is willing to pay fifteen dollars. The counter offer is accepted and a price for mowing the yard has been "fixed". Millions of people "fix prices" for goods and services, wholesale and retail, every day in the United States. That is called the free market.

Every time a consumer of a product or service decides to acquire such a product or service from provider "A" rather than provider "B", a price is "fixed" and provider "B" loses the sale, i.e., suffers a lost of business. That is the free market which the anti-trust laws are intended to encourage, not discourage. The free market gives to the consumer the freedom to pick and choose among providers and to elect to deal with any supplier the consumer chooses.

■ A claim that others "combined or contracted to fix prices" of a product or service does not amount to a violation of the Sherman Act. The anti-trust laws are aimed only at "price fixing" among those who compete with each other in the provision of goods or services, that is to say among those who sell or provide the same goods or services. Thus, if all the tow truck operators in Baton Rouge got together and agreed with each other upon a schedule of prices to be charged consumers of towing services, that would be a combination or contract to fix prices among competitors and might well be a restraint of trade covered by the Sherman Act.

That, however, is not the situation before this court.

The City of Baton Rouge is a consumer of towing services, not a provider of towing services and it is not in competition with plaintiffs or any other tow truck operator.

From time to time the city impounds motor vehicles and requires that they be towed to a storage lot. The contracts at issue provide that the tow truck operators will provide that service when called upon to do so, that the city will pay the "prices fixed" by the contracts upon performance of the service. There can be no question but that the city, as a consumer, is free to choose among providers and to select the one or more with which it will deal. That is exactly what has happened in this case.

The contracts entered into between the city and tow truck operators also "fix" the price of towing services to be provided to the owners or operators of disabled vehicles which must be removed from the public streets and highways because they represent an impediment to the movement of other vehicles. Counsel for plaintiffs has emphasized in oral argument that the City of Baton Rouge does not, itself, pay the costs of removal of these disabled vehicles. Counsel for plaintiffs insists that the fact that the city itself does not pay the prices "fixed" by the contracts somehow implicates the Sherman Act, although counsel has never spelled out how or why.

■ Without regard to who pays for towing services, there is no restraint of trade here. Those motorists who have a preference of tow truck operators are free to select the operator of their choice (and no price is "fixed" for those services by these contracts). Those motorists who have no preference in

tow truck operators receive the benefit of the price negotiated ("fixed") on their behalf by the city and the tow truck operators with whom it has contracted. Under Louisiana law, a contract such as this is called a stipulation **pour autrui** (for the benefit of a third party). Such contracts are lawful and fully enforceable under the provisions of LSA–C.C. Articles 1978 through 1982, including those entered by a municipality in favor of the public. See *Freeman v. Town of Many,* 394 So.2d 693 (La.App. 3rd Cir.), writ denied, 399 So.2d 598 (1981).

Here the city, as a consumer of towing services, has, for itself and the general public, selected the tow truck operators with whom it chooses deal. That election is simply the operation of the free market and in no way represents a "restraint of trade", although clearly the unsuccessful bidders have lost business. But that is not different from any other unsuccessful bidder in a competitive market. When the city buys police vehicles from one dealer, to the exclusion of others, the unsuccessful bidders lose that business. Clearly, however, the anti-trust laws are in no way implicated in such transactions.

Although not directly analogous, cases involving alleged tying arrangements in hospital contracting may be helpful in further explaining why the Sherman Act has no application to the contracts before this court. In *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) and *Beard v. Parkview Hosp.,* 912 F.2d 138 (6th Cir.1990), hospitals entered exclusive provider contracts for services to be provided to patients in the hospital (anesthesiology in the one and radiology in the other). In both cases, patients were to be billed directly for the medical services by the provider. In neither case did the hospital itself provide that service to patients or share in the fees collected by the provider. In both cases, the court held that there was no attempt to monopolize the provision of the medical service furnished, hence no violation of the Sherman Act. In those two cases, there were two products (services) involved (hospital services and separate medical services) which led to the argument that an illegal tying arrangement was in effect. In the case before this court, there is only one product (towing service) and that service is not provided by the City of Baton Rouge; neither does the City of Baton Rouge receive any economic benefit from the provision of towing services. The only interest of the City of Baton Rouge is the public interest in removal of disabled vehicles which impede the flow of traffic; the city has no interest in the towing of such vehicles. Here there is no attempt to monopolize any market; the city operating in the free market has simply selected the vendors with whom it chooses to do business from many offering the same services. Moreover, the city ordinance in this case even honors the choice of a motorist who elects to use the services of some different tow truck operator.

Here the City of Baton Rouge has simply acted in its capacity as a consumer of towing services. These towing service contracts, in the view of this court, are no different than other "sole source" contracts which the city might let for police or fire vehicles, for uniforms, for accounting services, or for any other product or service which the city might need. None are prohibited by the anti-trust laws.

■ This court is of the firm opinion that these contracts are simply not covered by the Sherman Act and that no anti-trust analysis is even required. Both sides, however, have argued the application or non-application of the so called state action exemption under the doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and its progeny. Assuming for purposes of argument that the ordinance and contracts before this court could be construed as anti-competitive conduct which would be prohibited in the private sector, the State of Louisiana has clearly authorized the City of Baton Rouge to engage in this type of activity. Under *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the City of Baton Rouge is immune from federal anti-trust liability for its activities in this area (assuming those activities could be so characterized). In *Town of Hallie,* the defendant City of Eau Clare, owned and operated the only sewerage disposal facility in the area.

It adopted a policy of refusing to permit use of its sewerage disposal facility unless areas desiring such services petitioned to come within the city limits and tie into the city's existing transportation sewerage system. The plaintiffs alleged a violation of the antitrust laws. The Supreme Court found that the State of Wisconsin had authorized the City of Eau Clare to engage in such activities and that the city was thereby exempt from the Sherman Act.

Relying upon the Supreme Court's opinion in *Town of Hallie,* supra, the Fifth Circuit found the state action exemption applicable in two cases involving provision of exclusive taxi cab service contracts to municipally owned airports. In *Independent Taxi, etc. v. Greater Houston, etc.,* 760 F.2d 607, cert. denied, 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985) and *Woolen v. Surtran Taxicabs,* 801 F.2d 159 (5th Cir.1986) the court considered exclusive contracts awarded by the City of Houston and the City of Dallas for taxi cab services to the Houston Intercontinental Airport and the Dallas–Fort Worth Airport. In both cases, the airport authority had awarded exclusive contracts to one provider for all taxi cab service from the airport. The court found the state action exemption applicable in each case, holding that each municipality was exempt from the Sherman Act.

Those cases, this court has the temerity to suggest, could be analyzed under the same process by which this court has examined the contracts executed by the City of Baton Rouge. Both Houston and Dallas operated airports, not taxi cabs; thus neither municipality was in competition with the taxi cab vendors who desired to provide the service. In each case, the airport authority awarded, among competing vendors, a single contract to provide the service. One difference is that the successful bidder, in each case paid the airport authority for the privilege of providing that service. In the case of the City of Baton Rouge, no tow truck operator pays the city anything.

By Section 20 of Act 169 of 1898, the State of Louisiana has authorized the City of Baton Rouge "to enact all laws and ordinances necessary for the general welfare of said corporation, and the inhabitants thereof ...", and

further "to exercise general police powers, in connection with any function of municipal government within the territorial limits of said city including the right, power and authority, to pass ordinances on all subject matters, including subject matters which the legislature has reserved to itself the right to regulate, but is not regulated or has not fully regulated, or which has reserved to itself the right to legislate, but has not legislated or has passed general or special laws which do not cover the entire subject matter, and on any and all other subject matters without exemption, regardless of whether or not the legislature has enacted special or general laws upon the same subject matter, subject only to the limitation that the provisions of said ordinances shall not directly conflict with provisions of any State laws upon the same subject matter ..."

In addition, the state legislature, by enacting LRS 45:180.1 A, 180.1 B, 180.1 C and 180.1 F, has authorized municipalities and parishes generally to "regulate, control, supervise and govern the business of operation and use of wreckers and towing devices ..."

Thus, assuming that these contracts could be construed as "regulation" of the towing business, the City of Baton Rouge has been fully authorized by the state to engage in such regulation and is thus clearly entitled to claim the so called state action exemption from the Sherman Act.

The court repeats, the state action exemption analysis is not necessary; it is superfluous, since the court is convinced that the activities engaged in by the City of Baton Rouge would not be anti-competitive under the Sherman Act, even if the private sector were involved.

The court is convinced that there is no violation of the Sherman Act under the circumstances of this case.

■ Since the state anti-trust law, LSA R.S. 51:122 and 123, are virtually identical to sections 1 and 2 of the Sherman Act, and the state courts routinely apply federal jurisprudence to state law claims, the court finds that there is no violation of the state anti-trust laws for the same reasons that there is no violation of the federal anti-trust laws.

### Preemption

Relying on the Nineteenth Judicial District Court's ruling in Towing Recovery Professionals of Louisiana, Inc., v. City of Baton Rouge, et al., that the regulation of tow trucks set out in ordinance 9533 was preempted by the Federal Aviation Administration Authorization Act of 1994, the plaintiffs claim that ordinance 10297 is simply an attempt to regulate tow truck operators in spite of the FAAAA. Plaintiffs claim that the contractual scheme created by ordinance 10297 is simply a subterfuge by the city to avoid the effects of decision in Towing and Recovery Professionals of Louisiana. Thus this court is faced with the issue of whether the FAAAA preempts the type of regulation over tow truck operators which (according to plaintiffs) the city has attempted to achieve, specifically through ordinance 10297.

The plaintiffs claims that § 601 of the FAAAA, 49 U.S.C., 11501(h)(1), expressly preempts state authority to regulate any rates, routes or services of tow truck operators. The statute says:

... [A] political subdivision of a state, ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of any motor carrier ... or any motor private carrier with respect to the transportation of property.

Comparing the two ordinances, ordinance 9533 was obviously a broad regulation of the rates and services of tow truck operators. The price a tow truck operator could charge for an unspecified tow was unilaterally imposed by the statute. Ordinance 10297, in contrast, does not unilaterally set a price for towing services. The rate charged for an unspecified tow under ordinance 10297, while fixed, is determined bilaterally, from the bid submitted by the tow truck operator selected as the "contracted towing company." It is clear that ordinance 10297 does not *regulate* the rates charged by towing companies, but could still be a law or regulation *relating* to the price of a motor carrier. Thus, the court will assume, without deciding, that ordinance

10297, appears to be expressly preempted by a literal reading of the preemption provision of § 601 of the FAAAA, 49 U.S.C., 11501(h)(1).

The United States District Court for the District of New Jersey considered an ordinance which fully regulated truck operators and thus clearly was "related to price, route, or service of any motor carrier." *426 Bloomfield Avenue Corp. v. Newark*, 904 F.Supp. 364 (D.N.J.1995). In a thoughtful and well reasoned opinion, Judge Barry of that court found that the FAAAA should not be interpreted to preempt municipal regulation of tow truck operators.[3] The court came to that conclusion that even though the preemption section of the FAAAA when read literally and in isolation would seem to preclude any regulation of tow truck operators by municipalities. The structure and purpose of the Act when read as a whole make it clear that the Congress did not intend to preclude municipal regulation of towing companies.

That court after thorough consideration of the sparse jurisprudence relating to the Act, the legislative history, the fact that the FAAAA is only a part of comprehensive legislation (the Interstate Commerce Act, 49 U.S.C.App. § 1, et seq.) as well as policy issues and plain common sense, concluded:

The court returns, then, to where essentially it began—the "ultimate touchstone" of congressional intent. Even if the explicit statutory language of the new subsection (h) of section [49 U.S.C.] 11501, when read in isolation, includes municipal non-consensual towing, the structure and purpose of section 11501 itself make it quite clear that that cannot be what Congress intended....

■ The reader is referred to Judge Barry's complete opinion which this court fully embraces. For all those reasons, this court respectfully disagrees with the decision of the Nineteenth Judicial District Court for the Parish of East Baton Rouge and holds that the FAAAA does not preempt the activities of the City of Baton Rouge here.

**3.** It is interesting to note that for whatever reason, the city of Newark had gone from a scheme similar to the present Baton Rouge scheme, set

out in ordinance 10297 to one like the prior ordinance, 9533.

Accordingly, the motion for preliminary injunction is hereby DENIED.