**Jimmie L. MARTIN d/b/a J & L Services, Eddie M. Haynes d/b/a Twilite Recovery Service, Morse's Auto Salvage and Tow Service, Inc., Leslie L. Morse, Sr., John W. Morse, and Robert L. Morse, Plaintiffs,**

**v.**

**Marvin V. STITES, Linn County Sheriff, Martin J. Read, Harold J. Mooney, Jr., and Charles Trask, Linn County Board Of County Commissioners, and Dean Schoenhals d/b/a Northside Auto, Defendants.**

Civil Action No. 98–2226–GTV.

United States District Court,
D. Kansas.

May 16, 2002.

---

40. *Dickerson v. Leavitt Rentals,* 995 F.Supp. 1242, 1248 (D.Kan.1998).

41. *Sooner Products v. McBride,* 708 F.2d 510, 512 (10th Cir.1983).

David W. Hauber, Glenn B. Brown, John J. Gates, Baty, Holm & Numrich, P.C., Kansas City, MO, for Jimmie L. Martin, Eddie M. Haynes Morse's Auto Salvage, Inc., Leslie L. Morse, Sr., John W. Morse.

James D. Griffin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, James D. Conkright, Jana V. Richards, Sanders Conkright & Warren LLP, Kansas City, MO, for Marvin V. Stites, Martin J. Read, Harold J. Mooney, Jr., Charles Trask, Linn County Bd. of County Com'rs.

Patrick E. McGrath, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, Glenn S. Grayson, Overland Park, KS, for Dean Schoenhals.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiffs, tow truck operators in Linn County, Kansas, bring this suit against the Linn County Sheriff and Board of County Commissioners, alleging antitrust and constitutional claims arising out of the methods used by the sheriff to refer tow calls. The sheriff's department refers tow calls to county tow truck operators when a vehicle on a highway or other public property requires the services of a tow truck and the driver is unavailable or has no preference as to which tow company to call. Such tow calls are known as "nonpreference calls." Plaintiffs claim that they did not receive nonpreference tow calls to which they were entitled under the Linn County tow referral policies, and that those tow calls and others were given to Dean Schoenhals, another tow truck operator and a political supporter of Sheriff Stites.

Before Sheriff Stites was elected in 1996, Linn County operated under a geographic tow referral policy, which the parties term a "working agreement." Under the geographic policy, the county was divided into two tow referral areas—one covering the western portion of the county, and the other covering the eastern portion. U.S. Highway 69, a major thoroughfare in the area, runs through the eastern portion of the county and serves as the source of the majority of tow referrals in the county. The sheriff's department referred nonpreference tow calls in the eastern portion of the county to a tow company in Pleasanton, Kansas and referred nonpreference tow calls in the western portion of the county to Plaintiffs Morse. Because Plaintiffs Morse were not referred any of the Highway 69 tow calls, they only received about twenty percent of all tow calls. The Pleasanton tow truck operators received about eighty percent of all tow calls. The Morses were unhappy with the geographic division of the county and actively sought implementation of an alternate tow referral policy or agreement that would afford them a larger percentage of tow calls.

After Sheriff Stites's election, a modified version of the geographic tow policy was used for a time, under which the Morses received more territory in the western portion of the county. In December 1997, a new policy, a rotational tow referral policy, was implemented on a trial basis. Under the rotational policy, each tow company was allotted a three-day rotation period. During its rotation period, the tow company would be called by the sheriff's department upon the discovery of a vehicle in need of towing unless customer preference or an emergency situation dictated otherwise. The geographic location of the disabled vehicle was no longer a consideration. The rotational system lasted for about two months, and then was changed back to the geographic referral

system in February 1998. Sheriff Stites testified in deposition that he "did not feel that it [the rotational policy] was serving the needs of the county to the best potential." Under both the geographic and the rotational policies, Plaintiffs claim that tow calls rightfully belonging to Plaintiffs were given to Mr. Schoenhals.

In February 1998, another policy was implemented that required tow truck operators to apply for a permit and receive approval from the sheriff and the Chairman of the Board of County Commissioners before they would receive tow referrals. Sheriff Stites refused to approve a permit for Transmasters, an out-of-county tow operator which had the necessary equipment to handle large-tow calls (calls to tow large transport vehicles). Sheriff Stites's refusal effectively prevented the Morses from receiving tow calls that required large-tow trucks, because the Morses did not own a large-tow truck. They had an agreement with Transmasters that Transmasters would assist them on calls that required a large-tow truck. Because Transmasters did not have a permit, the sheriff's department would not refer large-tow calls to the Morses. Mr. Schoenhals received the nonpreference large-tow calls.

After the geographic policy was reinstated and the permit system was implemented, Plaintiffs brought suit against Sheriff Stites, the Board of County Commissioners, and Mr. Schoenhals. Mr. Schoenhals has since been dismissed from the case. Remaining in the case are the following claims against Defendants: (1) Plaintiffs claim that in violation of § 1 and § 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, Defendants conspired to unreasonably restrain trade in interstate commerce and control the relevant tow truck market and engaged in an enterprise of directing business to Mr. Schoenhals; (2) Plaintiffs claim under 42 U.S.C. § 1983 that in violation of the Fourteenth Amendment, Defen-

dants deprived Plaintiffs of property and liberty interests without due process by discontinuing the rotational tow referral policy, referring certain tow calls to Mr. Schoenhals, refusing to issue Transmasters a permit (effectively denying Plaintiffs Morse large-tow referrals), and refusing to put Plaintiff Haynes back on the tow list after he was removed; (3) Plaintiffs claim under 42 U.S.C. § 1983 that in violation of the First Amendment, Defendants retaliated against Plaintiffs for opposing Sheriff Stites in the 1996 primary election, for frequently criticizing Sheriff Stites, and/or for not associating with Sheriff Stites; and (4) Plaintiffs claim under 42 U.S.C. § 1983 that Defendants conspired to deny Plaintiffs due process of law in violation of the Fourteenth Amendment and to retaliate against Plaintiffs for their political opposition and association in violation of the First Amendment. Plaintiffs seek damages, attorney fees, costs, and an injunction that would abolish the current geographic tow referral policy and establish a neutral tow referral system.

Plaintiffs also made a Fourteenth Amendment substantive due process claim in their Amended Complaint, but such a claim is not in the pretrial order. The pretrial order supersedes the Amended Complaint and controls the subsequent course of litigation. *Franklin v. United States*, 992 F.2d 1492, 1497 (10th Cir.1993); Fed.R.Civ.P. 16(e). Although Defendants' summary judgment motions address the claim, Plaintiffs did not respond to Defendants' arguments. The court assumes that Plaintiffs have abandoned the substantive due process claim, and grants summary judgment on the claim for the reasons stated in Defendants' summary judgment briefs.

The case is before the court on several motions: Defendants' motion for summary judgment on claims brought by Plaintiffs

Morse and Haynes (Doc. 61); Plaintiff Haynes's motion for partial summary judgment (Doc. 71); and Defendants' motion for summary judgment on claims brought by Plaintiff Martin (Doc. 130). For the following reasons, the court grants in part and denies in part Defendants' motion for summary judgment on claims brought by Plaintiffs Morse and Haynes (Doc. 61) and Defendants' motion for summary judgment on claims brought by Plaintiff Martin (Doc. 130). The court denies Plaintiff Haynes's motion for partial summary judgment (Doc. 71). Also pending is Defendant Schoenhals's motion for summary judgment (Doc. 73). Because Defendant Schoenhals has been dismissed from the case, that motion is denied as moot.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

### I. Antitrust Claims

Plaintiffs claim that Defendants violated Sections 1 and 2 of the Sherman Act and ask the court for injunctive relief. Defendants reply with a number of arguments: (1) Defendants are immune from Plaintiffs' antitrust claims under the state action immunity doctrine; (2) the Sherman Act does not apply because Linn County is merely a consumer of tow services; (3) Plaintiffs have failed to demonstrate any antitrust injury to the ultimate consumers; (4) there is no threat of immediate, irreparable harm to Plaintiffs; (5) the allocation of nonpreference tow calls does not involve a competitive market; (6) there is no market for large-tow calls in Linn County; (7) Defendants do not have market power, and even if they did, their actions are not an unreasonable restraint of trade; (8) Defendants do not possess monopoly power in the relevant market, and even if they did, there are valid reasons for the possession of the power; and (9) Plaintiffs have no evidence of a conspiracy to monopolize. The court rejects each of these arguments, and denies summary judgment as to Plaintiffs' antitrust claims. The court concludes that as a matter of law, Defendants are not

entitled to state action immunity, and that genuine issues of material fact remain as to Defendants' other antitrust arguments.

### A. State Action Immunity

■ A state by the enactment of appropriate statutes may elect to condone anticompetitive conduct, and principles of federalism and state sovereignty may insulate the state from liability; under such circumstances, the state will not be held liable under the Sherman Act for violation of antitrust law. *Parker v. Brown*, 317 U.S. 341, 350–51, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In the instant case, Plaintiffs have not sued the state. They have sued the county commissioners and Sheriff Stites in their official capacities. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Servs. of New York City*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). These individuals, as officers of a political subdivision or local government, may also be entitled to state action immunity under certain circumstances.

■ A political subdivision may be entitled to state action immunity if its acts are taken pursuant to a "clearly articulated and affirmatively expressed" state policy to "displace competition with regulation or monopoly service." *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (plurality opinion). The Tenth Circuit Court of Appeals employs a two-part test when evaluating whether a political subdivision is entitled to state action immunity. "First, the state legislature must have authorized the action under challenge. Second, the legislature must have intended to displace competition with regulation." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1120 (10th Cir.1991) (citation omitted). "It is not necessary ... for the state legislature to have stated explicit-

ly that it expected the City to engage in conduct that would have anticompetitive effects." *Hallie v. City of Eau Claire*, 471 U.S. 34, 42, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). "It is sufficient if the anticompetitive conduct 'is a foreseeable result' of the stated policy or it is 'clear that anticompetitive effects logically would result from [the] broad authority to regulate.'" *Allright Colo., Inc. v. City and County of Denver*, 937 F.2d 1502, 1507 (10th Cir. 1991) (quoting *Hallie*, 471 U.S. at 42, 105 S.Ct. 1713). However, the foreseeability test is not automatically met by any broad delegation of authority. If the state neutrally gives a political subdivision a broad authority to regulate, then the political subdivision will not be entitled to state action immunity:

> But plainly the requirement of "clear articulation and affirmative expression" is not satisfied when the State's position is one of mere neutrality respecting the ... actions challenged as anticompetitive. A State that allows its [political subdivisions] to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which ... liability is sought. Nor can those actions be truly described as "comprehended within the powers granted," since the term, "granted," necessarily implies an affirmative addressing of the subject by the State.

*Community Communications Co. v. City of Boulder*, 455 U.S. 40, 55, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). In Boulder, the allegedly anticompetitive ordinance was passed pursuant to the Home Rule Amendment to the Colorado constitution, which gave municipalities the general authority to govern local affairs. See generally *id.* at 43–46, 102 S.Ct. 835. The Supreme Court stated, "Acceptance of such a proposition—that the general grant of power to enact ordinances necessarily implies state authorization to enact specific

anticompetitive ordinances—would wholly eviscerate the concepts of 'clear articulation and affirmative expression' that our precedents require." *Id.* at 56, 102 S.Ct. 835.

■ In the instant case, Defendants argue that the following statutes give the county commissioners and Sheriff Stites the authority to implement anticompetitive policies, or at least make such implementation foreseeable: K.S.A. § 8–1102(a)(1), which provides that "[w]hen a person leaves a motor vehicle on a public highway or other property open to use by the public, the public agency having jurisdiction of such highway or other property open to use by the public ... may remove and impound the motor vehicle" and (c), which provides that "any law enforcement officer is hereby authorized to move such vehicle or cause to have the vehicle moved ...."; and K.S.A. § 65–6114, which provides:

> The governing body of any municipality may establish, operate and maintain a centralized emergency service communication system as a municipal function ... for the purpose of furnishing those services required to establish, operate and maintain an emergency medical service or ambulance service.... Such emergency communication system may provide for coordinated communication between all law enforcement agencies, ... motor vehicle repair and towing services, and such other persons and service agencies as may be required.

These statues do not clearly articulate and affirmatively express a state policy to displace competition. They merely give political subdivisions the authority to remove motor vehicles from public highways and property, and to establish a communication system by which to effectuate the vehicles' removal. As in Boulder, the state's position is one of "mere neutrality." It is no more foreseeable that a political subdivision would use its authority under these statutes to implement anticompetitive policies than it is that a political subdivision would use its authority to establish a tow referral system that results in increased competition. For these reasons, the county commissioners and Sheriff Stites are not entitled to state action immunity with respect to Plaintiffs' antitrust claims.

## B. Defendants' Other Arguments

■ Genuine issues of material fact exist with respect to Defendants' other arguments. Defendants first argue that Linn County is a mere consumer of tow services and not subject to the Sherman Act. Whether Linn County is a consumer is an issue of fact. Plaintiffs have presented evidence that Mr. Schoenhals gives Linn County free services and employs county employees. This evidence supports an inference that Linn County has an interest in Mr. Schoenhals receiving a disproportionate number of tow calls. Such a situation distinguishes the present case from *Brumfield Towing Service, Inc. v. City of Baton Rouge,* 911 F.Supp. 212 (M.D.La. 1996), the sole case Defendants cite in support of their argument. In *Brumfield,* the court held that the City of Baton Rouge, in contracting with one tow company to provide all nonpreference tows for the City, was merely a consumer of services. 911 F.Supp. at 217. As a mere consumer, the City could not violate the Sherman Act. *Id.* at 218.

*Brumfield* does not control the instant case because it did not involve any allegations of conspiracy between the City and the tow company. The court specifically noted that "the City of Baton Rouge [does not] receive any economic benefit from the provision of towing services. The only interest of the City of Baton Rouge is the public interest in removal of disabled vehicles which impede the flow of traffic; the city has no interest in the towing of such vehicles." *Id.* Viewing the evidence in the

light most favorable to Plaintiffs, a reasonable factfinder could find that the county commissioners and Sheriff Stites have an interest in referring a disproportionate number of tows to Mr. Schoenhals.

▮ Whether there is antitrust injury is also an issue of fact. Plaintiffs have offered evidence of at least one consumer who paid more for Mr. Schoenhal's tow services than the services of the Morses would have cost. Such evidence could lead a reasonable factfinder to find that there was injury to the consumer, or antitrust injury. Likewise, whether Plaintiffs have suffered irreparable harm is an issue of fact. Irreparable harm may be shown through the loss of customers, goodwill or a business. *Zurn Constructors, Inc. v. B.F. Goodrich Co.,* 685 F.Supp. 1172, 1181 (D.Kan.1988). Plaintiff John Morse testified in deposition that more than fifty percent of his customers were repeat customers. Every tow call that he did not receive was a potential lost repeat customer. Furthermore, both Plaintiff Haynes and Plaintiff Martin are now out of business. This evidence is sufficient to create a genuine issue of fact as to whether Plaintiffs suffered irreparable harm.

▮ The court also rejects Defendants' argument that they are entitled to summary judgment because the nonpreference tow market is not a competitive market. Defendants submit that the market is not competitive because the tow companies "are simply waiting their turn to perform tows that have already been earmarked for them." Defendants miss the point. The competition lies in the "earmarking" process; tow companies are competing for favorable positions on the county tow list. Moreover, they are competing for the repeat business of customers with whom they made contact through a nonpreference tow call. The court finds Defendants' argument that the market is not competitive as a matter of law unpersuasive.

▮ Likewise, the court finds Defendants' argument that there is no large-tow market in Linn County unpersuasive. There is evidently *some* market for large-tows in Linn County; otherwise, Plaintiffs would not be seeking that business. The court has been unable to find any case that specifies that a market must be expansive in order to be a market that can be monopolized. The court denies summary judgment based on this argument.

▮ Finally, whether Defendants possess market power and/or monopoly power are issues of fact. Both questions are dependent on the definition of the relevant market, which is generally an issue of fact. *Int'l Boxing Club, Inc. v. United States,* 358 U.S. 242, 245, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959). Whether Defendants' policies constituted an unreasonable restraint of trade and whether Defendants participated in a conspiracy to monopolize are also issues of fact. Plaintiffs have presented evidence of the anticompetitive effects of the policies, and evidence of preferential treatment given Mr. Schoenhals. They also have presented evidence that the sheriff's department received free services from Mr. Schoenhals and that the county commissioners held what Plaintiffs term a "secret meeting" with Mr. Schoenhals's brother-in-law to discuss the tow policies. Plaintiffs have submitted sufficient evidence to survive summary judgment on these issues.

## II. Procedural Due Process Claims—Property

▮ Plaintiffs allege that they were wrongfully deprived of property interests without due process. The pretrial order and summary judgment briefs do not clearly explain the property interests to which Plaintiffs are referring. However, after a review of the record, it appears to the court that Plaintiffs are making the

following claims: All Plaintiffs claim deprivation of the right to a continuation of the rotational tow referral policy. All Plaintiffs claim that, as the adopted geographic and rotational tow policies were administered, Plaintiffs were deprived of certain nonpreference tow calls to which they were entitled and which were instead given to Mr. Schoenhals. Plaintiffs Morse separately claim that they were deprived of certain large-tow calls. Finally, Plaintiff Haynes separately claims that he was deprived of his right to remain on the geographic tow list. Plaintiff Haynes has moved for summary judgment on his due process claims. Defendants assert that they are entitled to qualified immunity (and summary judgment) with respect to Plaintiffs' due process claims. Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir.1999). To determine whether a government official is entitled to qualified immunity, the court first must decide whether the plaintiff has " 'asserted a violation of a constitutional right at all.' " *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir.1995) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the plaintiff has made a valid claim, then the court must evaluate whether the asserted right was clearly established such that a reasonable person in the official's position would have known that his or her conduct violated that right. See *id.; Merkel v. Leavenworth County Emergency Med. Servs.*, No. 98–2335–JWL, 2000 WL 127266, at *10 (D.Kan. Jan.4, 2000). In the instant case, the court first must determine whether Plaintiffs have offered sufficient evidence

to support a claim that Defendants violated their constitutional right to due process before being deprived of a property interest. As a threshold matter, the court must evaluate whether Plaintiffs have protectable property interests at all.

▮▮▮▮ In order to have a property interest protected by the Fourteenth Amendment, a person "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests may arise from state statutes, established rules, local ordinances, or mutually explicit understandings. *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1231 (10th Cir.1990) (citation omitted). Courts should look to state law to determine the sufficiency of a claim of entitlement. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In this case, the existence of a property interest is an issue governed by Kansas state law. See *Dickeson v. Quarberg*, 844 F.2d 1435, 1438 n. 5 (10th Cir. 1988). Plaintiffs submit that their property interest in receiving tow calls arises out of either county law or mutually explicit understandings.

To establish that they have a property interest arising out of county law, Plaintiffs must show that the county tow policies had the force of law. "[T]he question is whether any state decisional law, statute, or regulation having the force of law authorized or mandated creation of the entitlement that plaintiffs claim." *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1214 (11th Cir.1995). This court has already decided that the Linn County tow policy did not have the force and effect of law. *Martin*, 31 F.Supp.2d 926. The Tenth Circuit affirmed this decision.

*Martin,* 4 Fed. Appx. 621, 2001 WL 121855.

■ A property interest may also arise from mutually explicit understandings. *Abercrombie,* 896 F.2d at 1231 (citation omitted). The court concludes that the parties did not have any mutually explicit understandings regarding the rotational tow policy's continuation, Plaintiffs receiving large-tow calls, or Plaintiffs remaining on the tow list. No evidence has been submitted suggesting that the parties understood that the rotational tow policy would not be changed, that the Morses would be able to receive large-tow calls from the sheriff's department, or that once a tow company was on the tow list, it could not be removed. No property interest was created under the foregoing theories, and Defendants are entitled to summary judgment on them. Conversely, Plaintiff Haynes is not entitled to summary judgment on these theories. Because the court is granting Defendants' motions, it must necessarily deny Plaintiff Haynes's motion.

■ However, there is sufficient evidence to create a genuine issue of material fact as to whether there was a mutually explicit understanding that Plaintiffs would receive all calls to which they were entitled under the geographic and rotational tow policies as adopted and administered. There is evidence that the county commissioners expected the policies to be enforced and administered fairly by Sheriff Stites; Commissioner Read testified in deposition that the county commissioners were trying to give all the businesses a "fair shot." Commissioner Read also testified in deposition that he understood that under the geographic tow referral policy, tow calls would be equally rotated on the east side of the county between Mr. Schoenhals and Twilite Tow, which was Plaintiffs Haynes and Martin's tow company. According to accident reports, there were at least seven instances where Mr. Schoen-

hals received a tow referral on days when Twilite Tow was entitled to the business. The Morses also offered evidence of several calls they should have received but did not. Such evidence is sufficient to create a genuine issue of material fact as to whether Plaintiffs were deprived of a property interest.

The facts upon which due process can be determined with respect to Plaintiffs being denied tow calls are also for a jury. The issue is whether Defendants acted reasonably in assigning or not assigning tow calls to Plaintiffs. The record contains evidence that before giving calls away that should have gone to Plaintiffs, the sheriff's department tried unsuccessfully to reach Plaintiffs to give them the calls. Whether this satisfies the reasonableness test is an issue of fact for a jury.

Even though a jury question exists as to whether Plaintiffs were deprived of a property interest without due process, Defendants can still escape liability under the doctrine of qualified immunity if Plaintiffs cannot show that the alleged constitutional violation was clearly established. *Moore,* 57 F.3d at 931. The Tenth Circuit has previously held that a tow company can legitimately claim a property interest in receiving tow referrals. *Abercrombie,* 896 F.2d 1228. In *Abercrombie,* the court held that an Oklahoma state statute required "the City of Catoosa to make wrecker service referrals on an equal basis as nearly as possible and thus created a property interest in wrecker referrals in favor of the plaintiff." *Id.* at 1232.

■ *Abercrombie* made it clear that state statutes, established rules, local ordinances, or mutually explicit understandings can create a property right in receiving tow referrals. There is evidence in the record that the county commissioners expected that the tow referrals would be distributed fairly. The court concludes

that the law was clearly established such that Sheriff Stites and the county commissioners should have known that their conduct was violating the law. Defendants are not entitled to qualified immunity, and the court denies summary judgment on Plaintiffs' claim that they were denied certain tow calls fairly due to them under the geographic and rotational policies without due process.

### III. Procedural Due Process Claims—Liberty

Plaintiffs Morse have agreed that their claim for deprivation of liberty interests should be dismissed. Therefore, the court grants summary judgment on Plaintiffs Morses' claims that they were deprived of liberty interests without due process for the reasons stated in Defendants' briefs. Plaintiffs Haynes and Martin maintain that their claims for deprivation of liberty interests without due process should proceed to trial. Plaintiff Haynes further argues that he should be granted summary judgment on his claim. Defendants assert that they are entitled to qualified immunity with respect to Plaintiffs' claims. The court agrees, and grants Defendants' summary judgment motions on this issue.

Plaintiffs Haynes and Martin claim that Defendants have denied them the right to operate tow businesses in Linn County. According to Plaintiffs, Defendants have deprived them of protected liberty interests by removing them, actually or effectively, from the tow referral list. Plaintiffs claim that they were forced to go out of business because they did not receive enough tow calls from the Linn County Sheriff's Department.

Plaintiffs Martin and Haynes operated Twilite Tow. They had a permit and were supposed to share nonpreference calls with Mr. Schoenhals on the east side of the county. In April of 1998, Plaintiff Martin told Sheriff Stites, "Take us off the list today, I'm out of business." Sheriff Stites took Twilite Tow off the list, although the owner of Twilite Tow was listed as Plaintiff Haynes on the permit. Sheriff Stites did not check with Plaintiff Haynes before taking him off the tow list. Haynes then asked to be put back on the list, but Sheriff Stites denied his request.

 "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable government interference comes within the 'liberty' and 'property' concepts of the Fifth [and Fourteenth] Amendment[s]." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). "[T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause." *Bernard v. United Township High Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir.1993). In *Cowan v. Corley*, 814 F.2d 223, 227 (5th Cir.1987), a sheriff gave preferential treatment to certain tow companies. The plaintiff tow company became unable to compete, and was expelled from the towing association that received all of the county business. *Cowan*, 814 F.2d at 225. The court concluded that the plaintiff tow company might have a liberty interest that would make his removal from the towing association a violation of the due process clause, and denied a motion to dismiss. *Id.* at 228.

Other courts have declined to find a liberty interest when a plaintiff is denied government business but can still engage in private business. The Eleventh Circuit, in a case similar to the case at hand, distinguished *Cowan* and stated:

Here, the removal of the plaintiffs from the [tow] rotation list does not affect

their right to operate wrecker service businesses, to remove vehicles from public property at the request of the owners, or to provide wrecker services to any member of the public who requests such services. In short, the removal of the plaintiffs from the rotation list does not cognizably burden the plaintiffs' liberty "to follow a chosen profession free from unreasonable governmental interference," or "to work for a living in the common occupations of the community." *Morley's Auto Body, Inc.*, 70 F.3d at 1217 n. 5 (internal citations omitted). Similarly, another court has stated, "A business owner cannot claim a right to government referrals when they still have [the] right to do business with private individuals." *Fort Bend County Wrecker Ass'n v. Wright*, 39 S.W.3d 421, 427 (Tex.App.—Houston(1 Dist.) 2001). Yet another court has opined that mere economic hardship is insufficient to establish deprivation of a liberty interest:

> Plaintiffs respond that there is little or no market for preference storage, and that without referral business from the City of Shreveport, they may not be able to survive economically in the storage business. Unfortunately, the evidence does indicate that at least one or two of the plaintiff storage companies will suffer significant economic hardship as a result of the loss of the City's business. Yet a law or ordinance does not violate the Constitution solely because it directly or indirectly results in economic hardship to some sector of the private market. Were that the case, few regulatory statutes could pass constitutional muster. In this case, even if some of the plaintiffs suffer adverse economic effects as a result of the change to central storage, they have not established that they were deprived of a protected liberty interest under the Fourteenth Amendment.

*Giddens v. City of Shreveport*, 901 F.Supp. 1170, 1177 (W.D.La.1995).

Plaintiff Haynes and Martin were not prevented from engaging in the towing business in Linn County by virtue of being taken off the sheriff's tow list. They were only denied government referrals. As noted above, "[a] business owner cannot claim a right to government referrals when they still have [the] right to do business with private individuals." *Fort Bend County Wrecker Ass'n*, 39 S.W.3d at 427. Evidence is before the court that there are many sources of private calls in Linn County; for example, Plaintiffs Morse reported in response to interrogatories that tow calls from sources other than the sheriff's department accounted for 105 out of 157 tow calls in 1998; 95 out of 131 tow calls in 1997; 89 out of 141 tow calls in 1996; 61 out of 138 tow calls in 1995; and 52 out of 129 tow calls in 1994. While Twilite Tow was in business in 1998, the evidence shows that it received 53 tow calls, 24 of which were from sources other than the sheriff's department. The court determines from this evidence that the sheriff's department is not the sole source of tow calls in the county.

While being taken off the county tow list may have resulted in economic hardship for Plaintiffs Haynes and Martin, "a law or ordinance does not violate the Constitution solely because it directly or indirectly results in economic hardship." See *Giddens*, 901 F.Supp. at 1177. Absent a constitutional violation, Defendants are entitled to qualified immunity. See *Moore*, 57 F.3d at 931 (quoting *Siegert*, 500 U.S. at 232, 111 S.Ct. 1789). Accordingly, the court grants Defendants' summary judgment motions as to Plaintiffs' liberty interest claims and denies Plaintiff Haynes's motion for partial summary judgment on his liberty interest claim.

## IV. First Amendment Claims

Plaintiffs next claim that they were retaliated against because they publicly criticized Sheriff Stites, refused to politically support him, and did not associate with him. The court concludes that a genuine issue of material fact exists regarding this issue, and denies summary judgment.

 It is well-established that "even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). For the purposes of a freedom of speech claim, independent contractors (as Plaintiffs are in this case) are treated as government employees. *Board of County Commissioners, Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 678–81, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

 Because this case involves alleged retaliation against Plaintiffs for expression of speech, the court's analysis involves the following four steps:

First, [the court] must determine whether the employee's speech involves a matter of public concern. If so, [the court] then balance[s] the employee's interest in commenting upon matters of public concern "against the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees." Speech is protected if the employee's interest outweighs the interest of the employer. If this balance tips in favor of the employee, the employee then must show that the speech was a "substantial factor or a motivating factor in the detrimental employment decision." Finally, if Plaintiff makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. The first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected. The second two steps concern causation and involve questions of fact.

*Dill v. City of Edmond,* 155 F.3d 1193, 1201–02 (10th Cir.1998) (citations omitted).

Defendants do not challenge whether Plaintiffs' speech (or association) involved a matter of public concern or whether Plaintiffs' interests outweigh Defendants' interests. Instead, Defendants focus on the issue of causation. Defendants argue that Plaintiffs cannot establish causation because all of the instances of protected speech and association occurred after the tow referral policy reverted to the geographical policy. They also argue that the geographic policy would have been reinstated regardless of any protected speech by Plaintiffs.[1]

 Reinstatement of the geographic tow referral policy is only one of the issues here. Plaintiffs also claim that both the rotational and the geographic policies were administered unfairly. Consequently, even those comments made by Plaintiffs after reinstatement of the geographic policy are relevant in determining whether causation can be proved. Moreover, evi-

---

1. The court notes that Defendants do not argue in their briefs that they are entitled to qualified immunity on Plaintiffs' First Amendment claims, even though they listed it as a defense in the pretrial order. Because Defen- dants do not argue qualified immunity in their summary judgment briefs, the court does not consider whether they are entitled to the defense.

dence exists that Plaintiffs engaged in protected speech and association even before the geographic policy was reinstated. In the summer of 1996, before Sheriff Stites's election, Plaintiff Les Morse told Stites that he would not support him politically. Plaintiff Les Morse testified in deposition that he thought Sheriff Stites had "an ax to grind" with him because he did not support him in the election and because of the numerous times he complained about the unfair administration of the Linn County tow policies. The county commissioners were aware by March of 1998 that Plaintiffs had made a number of accusations about the fairness of the tow referral system. Sheriff Stites testified in deposition that he was aware that Plaintiffs had been critical of the sheriff's department and that he knew that there had been a number of pieces in the newspaper about Plaintiffs criticizing the sheriff's department. He also testified in affidavit that Plaintiffs' complaints escalated when the rotational policy was in effect. Such evidence is sufficient to create a genuine issue of material fact as to the causation issue. The court denies summary judgment on Plaintiffs' First Amendment claims.

## V. Conspiracy Claims

■ Plaintiffs claim under 42 U.S.C. § 1983 that Defendants conspired to deny Plaintiffs due process of law in violation of the Fourteenth Amendment and to retaliate against Plaintiffs for their political opposition and association in violation of the First Amendment. The court concludes that there are genuine issues of material fact with respect to these claims.

■ To prove a conspiracy between private parties and state actors to violate constitutional rights actionable under § 1983, Plaintiffs must show a joint participation, agreement, or meeting of the minds to violate such constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

152, 90 S.Ct. 1598, 26 L.Ed.2d 142; (1970). They must establish both the deprivation of a constitutional right and the existence of a conspiracy. *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 6 (10th Cir.1990). The court has already held that Plaintiffs are entitled to a jury determination of whether Defendants violated certain constitutional rights. Plaintiffs therefore may be able to prove deprivation of a constitutional right. They also may be able to prove the existence of a conspiracy. There is circumstantial evidence that could lead a reasonable jury to find that a conspiracy existed. Evidence is before the court that the county commissioners discussed one tow policy in a secret session with Mr. Schoenhal's brother-in-law and excluded Plaintiff John Morse from the meeting. There is also evidence that Mr. Schoenhals is a political supporter of Sheriff Stites and gives free services to the sheriff's department. He employs a deputy sheriff as a tow truck driver, and pays county fire department employees to help him clean up large-tow accidents. Furthermore, Commissioner Trask testified in deposition that he was aware that a majority of the sheriff's maintenance budget was devoted to Mr. Schoenhal's business. All of this evidence is sufficient to create a genuine issue of material fact as to whether Defendants were part of a conspiracy to violate Plaintiffs' constitutional rights. The court denies summary judgment on Plaintiffs' § 1983 conspiracy claims.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' motions for summary judgment on claims brought by Plaintiffs Morse and Haynes (Doc. 61) and Plaintiff Martin (Doc. 130) are granted in part and denied in part as follows:

- The motions are denied with respect to Plaintiffs' antitrust claims.

- The motions are denied with respect to Plaintiffs' property due process claims for deprivation of the right to receive tow calls to which they were entitled under the adopted tow policies.

- The motions are granted with respect to Plaintiffs' property due process claims for deprivation of the right to a continuation of the rotational tow referral policy, deprivation of large-tow calls, and deprivation of the right to remain on the geographic tow referral list.

- The motions are granted with respect to Plaintiffs' liberty due process claims.

- The motions are denied with respect to Plaintiffs' freedom of speech and association claims.

- The motions are denied with respect to Plaintiffs' conspiracy claims.

Plaintiff Haynes's motion for partial summary judgment (Doc. 71) is denied. Defendant Schoenhals's motion for summary judgment (Doc. 73) is denied as moot.

**IT IS SO ORDERED.**